The Court (per Gildersleeve, J.)
on the foregoing facts, ordered that the defendant be committed to the asylum for the insane at Utica.
II. Motion to compel the sheriff to make a return to a writ of hapeas corpus.
The defendant’s attorney, after the making of the order of commitment, sued out a writ of habeas corpus to test its validity.
The prisoner immediately after the commitment was made, was taken into custody by an-officer and deputy of the sheriff and taken to the city prison and there delivered into the custody of Thomas P. Walsh, the warden.
From the affidavit of the relator’s attorney it appears that he took the writ into the office of the sheriff and there saw the under-sheriff, and asked him if he would receive service of the writ. The under-sheriff told him that it must be served upon the clerk at the desk in the outer office. He then went to the clerk and handed the writ to him, at the same time informing him what it was.
The clerk took the writ into his hands, read it, and said *302 it would be necessary to pay $3.18 as fees to the sheriff. The relator’s attorney then stated that he was acting as assigned counsel by order of Judge Gildebsleeve. No money was provided to pay fees and, that as he understood the law, the sheriff ■ had no right, in this city, to demand fees on a writ of habeas corpus.* The clerk replied that according to his instructions unless the fees were paid on the writ he could not receive it, and thereupon handed the writ back, refusing to keep it.
The clerk was then informed that the relator was confined in the city prison, in the actual custody of the keeper, and that the writ would be served upon the keeper, and that the production of the relator according to the command of the writ would be insisted upon. To this the clerk made no reply. The relator’s attorney then went to the'city prison, and served the writ upon T. P. Walsh the keeper thereof, who received the writ and kept it.
On the day when the writ was returnable, the court of Oyer and Terminer was not in session.
Walsh made a return to the writ, alleging that the relator had been taken out of his custody by the sheriff, by virtue of a commitment requiring the relator to be taken to the State lunatic asylum.
The sheriff made no return whatever to the writ.
A motion was then made that the sheriff be compelled to make a return to the writ.
Abraham Suydam for the motion.
Assistant District Attorney 'Macdona, opposed.
Barrett, J.
The writ of habeas corpus was not served upon the sheriff as required by law. By section 1999 of the •Gode, such a writ must be personally served, “ in like manner as a summons issued out of the Supreme Court."’ By section •2003 it may be served by delivering “ it to the person to whom it is directed.” Section 2004 provides that “a sheriff upon whom complete service of a writ of habeas corpus is made, as prescribed in. this article, must obey and make return to the writ.”
In the present case, these provisions were entirely ignored, and there was not even a service upon the clerk in the sheriff’s office. If Mr. Suydam supposed that such service upon a clerk was sufficient, he should not have taken the writ back from the clerk, but should have left it where .he originally delivered it.
The law, however, as it would seem from the above quotations, requires a personal service, and this was not even •attempted. It is stated in the affidavit that the prisoner was in the sheriff’s custody, under the commitment of the court •of General Sessions, and this is, undoubtedly, a correct View •of the legal situation. Under such circumstances, the relator was bound to serve the writ upon the sheriff. Service at the jail by leaving the writ with the warden was only effective in case the sheriff could not, after due diligence, be found :(§ 2003)., The relator could not escape' the requirement to serve the sheriff personally, or to prove that he could not be found, with due diligence, by directing the writ to the warden.
The fact is, that the sheriff did his duty in executing the •commitment of the Sessions ; and he would have been derelict in his duty had he failed to do so because the relator’s attorney had obtained a writ which he did not choose to serve upon Mm. The sheriff would have been justified1 in using the *304 power of the county to aid him in executing the commitment, had the warden interfered with him in faking his= prisoper. The latter was not in the warden’s custody, but in the sheriff’s. He was secured in a jail of which the-warden was keeper, but the sheriff was the only legal custodian under the commitment.
The motion must, therefore, be denied, in all its parts. •
Ordered accordingly.

 The controversy in this county as to whether fees may be required by the sheriff upon habeas corpus turns upon the provisions of Code Civ. Pro. § 2000 and § 1488 of the N. Y. City Consolidation Act (L. 1882, o. 410).
Section 2000 of the Code provides that “ where the prisoner is in the custody of a sheriff, constable, coroner or marshal, the service is not complete unless the person serving the writ tenders to the officer the fees allowed by law for bringing up the prisoner.”
Section 1488 of the Consolidation Act is as follows: “ There shall be no costs or fees charged or received upon any proceeding upon writ of habeas corpus, either by the judge granting them, or by the officers serving them, or the jailor obeying their orders.”